**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 14-130-DLB-CJS**

**GREGORY SKETCH**                                                                 **PLAINTIFF**

**vs.**                          <u>**MEMORANDUM OPINION AND ORDER**</u>

**BOONE COUNTY, KENTUCKY, et al.**                                   **DEFENDANTS**

\*     \*     \*     \*     \*     \*     \*

        Before the Court are Plaintiff Gregory Sketch's Motion for Partial Summary Judgment (Doc. # 24) and Defendants Gary Moore and Boone County's Motion for Summary Judgment (Doc. # 25). Also before the Court is Sketch's Motion to Strike. (Doc. # 49). Each Motion is fully briefed and ripe for the Court's review. (Docs. # 46, 47, 48, 51, 52, and 54). Sketch's Motion to Strike will be granted in part, but Defendants' Response (Doc. # 47) will not be stricken in its entirety; instead, the Court will not consider the challenged evidence in adjudicating the dispositive motions before it. For the reasons stated herein, Plaintiff's Motion for Partial Summary Judgment will be **denied**, and Defendants' Motion for Summary Judgment will be **granted in full**.

**I.      Factual and Procedural Background**

        Plaintiff Gregory Sketch became the County Engineer for Boone County, Kentucky in 1994. (Doc. # 50-1 at 7). During his nineteen years of service, Sketch had an unblemished record. (Doc. # 50-1 at 63). He had satisfactorily served several Boone

1

County Judge-Executives, and had been re-appointed multiple times.  Sketch had most recently been re-appointed to a four-year term in January 2011 by Defendant Judge-Executive Gary Moore and the Boone County Fiscal Court.

As Boone County Engineer, Sketch headed the Public Works Department, and had done so since 2000.  (Doc. # 50-1 at 10).  The Public Works Department, among other tasks, collects large scrap items from Boone County residents free of charge.  These items can be broken down into two broad categories: white goods and non-white goods.  For many years, Boone County had contracted with a recycling company to process the discarded "white goods" – items such as refrigerators, washers, and dryers.  The County received revenue from selling the collected white goods.  Other forms of scrap metal, the "non-white goods," were not sold and no revenue was derived from their collection.

Around 2007 or 2008, Sketch was approached by Dave Becker, one of his Public Works Department employees. (Doc. # 50-1 at 11-12).  Becker pointed out that the County was not receiving revenue for the non-white-goods scrap metal it was collecting.  Rather than let the scrap metal go to waste, Becker proposed selling some of it and then using the revenue to buy turkeys for needy Boone County families during the holidays.  Sketch acquiesced to this plan, and a sort of "trash-for-turkeys" program was born.

This program went on for several years with no issue.  There would never be any evidence of foul play; the parties agree that no personal benefit accrued to any Public Works Department employee. The employees of the Public Works Department did not select the turkey recipients; they were selected by the local schools.  A small portion of the previously neglected revenues were used to pay for a new television for the Public Works Department office and for annual holiday parties – parties attended by Judge-Executive

2

Moore and other County officials.  At these and other County functions, Sketch would note the number of turkeys donated each holiday season by the Public Works Department.  No County official ever questioned how the Public Works Department purchased the turkeys.

Around this same time, in a separate department within the Boone County government, another County official was also making use of non-white-goods scrap metal. This individual, however, used the revenue generated by the sale of the scrap for his own benefit, rather than that of needy families.  This scandal, coupled with a new contract under which the County would begin receiving revenue from the sale of white goods and non-white-goods scrap metal, brought an end to the Public Works Department's turkey donations.  (Doc. #50-1 at 13).

Unfortunately for Sketch, no good deed goes unpunished.  An anonymous caller tipped off local authorities that employees from the Public Works Department had been selling County scrap metal for cash. (Doc. # 42-1 at 50-52). The Boone County Sheriff's Office began an investigation of Public Works Department, and informed Judge-Executive Moore and County Administrator Jeff Earlywine that its officers were looking into allegations of theft of County property by Public Works Department employees.  In May 2013, Detective Josh Quinn interviewed Sketch.  At no time was Sketch told he was under investigation.  But he was.  Boone County officials knew as much, and told the Sheriff's Office that the County would let them complete their investigation before taking any disciplinary action against Sketch.

In July 2013, Quinn informed Earlywine that the Sheriff's Office investigation was nearing completion, and that the case was being handed over to the prosecutor for presentation to the grand jury.  Rather than waiting for a true bill from the grand jury or an

arrest, the County decided to initiate disciplinary proceedings against Sketch.  On July 16, 2013, the Boone County Fiscal Court met and entered into an executive session in which Moore, Earlywine, and Lisa Buerkley discussed the Sketch situation.  During this meeting, Moore made it known that he wanted to take the first steps towards removing Sketch as County Engineer. Moore instructed Earlywine to inform Sketch of a meeting the following morning at which formal disciplinary charges would be lodged against him.

Later that evening, Earlywine called Sketch, and told him to report to the Boone County Administration Building the following morning.  (Doc. # 50-1 at 38).  An incredulous Sketch inquired as to why, and at first was rebuked by Earlywine.  Eventually, Earlywine told Sketch that he was being charged with malfeasance and misfeasance of office, and that the meeting the next morning was to suspend Sketch without pay pending a hearing on the charges against him.

The next day, Sketch reported as instructed.  Moore presented Sketch with the official charges against him and suspended him without pay effective immediately.  Sketch claims that Moore told him that he "wanted [Sketch] gone now." (Doc. # 50 at 41).  Sketch spoke at the hearing, and lamented the decision to discipline him on these charges after nineteen years of service.  During the meeting, Sketch was informed for the first time that he was under criminal investigation, and also was told that he was entitled to a hearing before Moore.  That hearing was scheduled for August 6, 2013.

Sketch retained counsel.  He ultimately decided to take out a $25,000 loan that enabled him to retire immediately, although he would incur significant cuts to the benefits of that retirement, rather than go through with the hearing before Moore and the potential appeal procedures that would follow if Moore rendered an adverse decision.  Sketch was

4

less than a year away from full retirement, and if he failed to resign before the August 6th hearing, risked losing everything. Additionally, Sketch's counsel told him that speaking at the hearing was dangerous due to the on-going criminal investigation. Weighing all of these factors, Sketch retired from public service effective July 31, 2013.

The Sheriff's Office ultimately found poor recordkeeping and cash-handling – specifically, co-mingling of personal and work funds and a large amount of cash in Becker's locker – but uncovered nothing criminal; in fact, all parties admit that no Public Works Department employee derived any personal benefit from the funds generated by selling scrap metal. On June 10, 2014, Sketch filed a lawsuit in Boone County Circuit Court against Boone County and Gary Moore, in his individual and official capacities, alleging that his procedural and substantive due process rights were violated and claiming malicious prosecution under Kentucky state law. Defendants removed the action to this Court pursuant to the Court's federal question jurisdiction. (Doc. # 1). Sketch filed a Motion for Partial Summary Judgment on his procedural due process claim. Defendants filed a Motion for Summary Judgment for all claims against them. Those motions have been fully briefed. Sketch also filed a Motion to Strike the Defendants' Response Pursuant to Fed. R. Civ. P. 12(f), which has been fully briefed as well.

## II. Analysis

### A. *Motion to Strike*

Sketch has filed a Motion to Strike Defendants' Response to his Motion for Partial Summary Judgment pursuant to Fed. R. Civ. P. 12(f). Sketch claims that Defendants' polygraph evidence is immaterial, impertinent, and scandalous. He further states that it

should be stricken because the evidence would be inadmissible at trial.

Defendants correctly argue that Rule 12(f) is not a vehicle for striking evidence attached to support a dispositive motion.  *See Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006) (noting that Rule 12(f) is for pleadings, which, as defined by Rule 7(a), do not include dispositive motions or exhibits attached thereto).  However, the Court must still consider whether the evidence surrounding the polygraph examination would be admissible at trial.  *See* Fed. R. Civ. P. 56(c)(2) (permitting a party to object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence at trial).

The content of the evidence used to support or oppose a motion for summary judgment is more important than the form.  *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).  For example, deposition testimony may assist a party in surviving a motion for summary judgment – even if the deposition itself is not admissible at trial – provided that oral testimony would be available at trial and would create a genuine issue of material fact.  *Id*.  The results of a polygraph examination are generally inadmissible, absent an agreement or stipulation between the parties.  *Wolfel v. Holbrook*, 823 F.2d 970, 972 (6th Cir. 1987).  The parties here have no agreement on the admissibility of the polygraph results.  In limited circumstances, however, the Court may find polygraph results to be admissible if they are relevant to the proof developed by the probative evidence.  *Id*. (citing *Murphy v. Cincinnati Ins. Co.*, 772 F.2d 273, 277 (6th Cir. 1985)).

The Sixth Circuit has created a two-step test for considering the admissibility of polygraph-related evidence.  *Id*; *see also Barnier v. Szentmikolski*, 810 F.2d 594, 597 (6th

6

Cir. 1987).  First, the Court must determine if the proffered evidence is relevant.  *Wolfel*, 823 F.2d at 972.  Second, if the evidence is relevant, it must balance the probative value of the evidence against the hazard of unfair prejudice and confusion of the jury.  *Id*.

The Court finds that the results of the polygraph are relevant. While the actual results are not probative, the effect those results may have had on Boone County's decision-makers is relevant.  Sketch was given a polygraph test by the Boone County Sheriff's Office, and he failed.  This could have occurred for a variety of reasons – polygraph tests are not known for their absolute reliability. *Wolfel*, 823 F.2d at 974 (noting the general skepticism within the scientific community regarding the reliability of polygraph examinations).  Nevertheless, the Boone County Sheriff's Office and Moore knew Sketch had failed the polygraph.  In so far as they may have considered those results when determining whether to suspend Sketch, the results are relevant.

However, the probative value of the polygraph results is outweighed by the risk of prejudice.  Sketch and Defendants agree on most of the facts in this case.  Both sides acknowledge that Sketch authorized the trash-for-turkeys program, that he did not explicitly inform his superiors of it, and that he did not personally benefit from the funds.  The results of the polygraph examination do not contradict any of Sketch's admissions. In short, the polygraph results are not probative enough to outweigh the potential risk that a "failed" polygraph indicates deceit or lying by Sketch.  Accordingly, Plaintiff's Motion to Strike (Doc. # 49) is **granted**, but not as to the entire response; instead, the Court simply will not consider the polygraph results when ruling on the parties' dispositive motions.

**B.    *Cross-Motions for Summary Judgment***

    **i.    Standard of Review**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The "moving party bears the burden of showing the absence of any genuine issues of material fact."  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

Once the movant has satisfied its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co.*, 475 U.S. at 586; rather, it must produce specific facts showing that a genuine issue remains.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  If, after reviewing the record in its entirety, a rational fact finder could not find for the nonmoving party, summary judgment should be granted.  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998).

Importantly, the standard of review does not change merely because the parties present cross-motions.  *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).  Such motions require the Court to "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the non-moving party."  *Beck v. City of Cleveland, Ohio*, 390 F.3d 912, 917 (6th Cir. 2004) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 2004)).

ii.      **Constitutional Claims**

Sketch has brought two claims under 42 U.S.C. § 1983 – one for an alleged violation of his procedural due process rights and another for a violation of his substantive due process rights.  Each claim will be addressed, and denied, in turn.

a.      *Sovereign Immunity*

As a threshold matter, the Court notes that Boone County is properly sued in this action, and is not protected by any form of immunity, sovereign or otherwise.  Sovereign immunity is not derived from, nor limited by, the Eleventh Amendment, *Alden v. Maine*, 527 U.S. 706, 713 (1999).  Thus, sovereign immunity extends beyond the mere text of that amendment to bar actions against a state by its own citizens.  *Hans v. Louisiana*, 134 U.S. 1, 15 (1890); *see also S.J. v. Hamilton Cnty., Ohio*, 374 F.3d 416, 419 (reaffirming *Hans*). While sovereign immunity protects states and their instrumentalities from suit, it does not bar § 1983 actions against counties and municipalities.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977).  And while Kentucky counties are "cloaked with sovereign immunity" from state-law claims, *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004), they are exposed to liability under federal law. *Doyle*, 429 U.S. at 280.

Counties are liable under § 1983 only in certain limited circumstances.  One of these instances is where the challenged action was taken by a county official with final decision-making authority.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481-83 (1986) (holding that § 1983 liability attached to actions of the county that are the result of the exercise of final policy-

making authority of its officials).[1]

Accordingly, if Moore was the final decision-maker for Sketch's proposed termination, then the County may be held liable for his actions.  Under KRS 179.020, the county judge-executive appoints the county engineer with consent of the fiscal court, and under the Boone County Administrative Code, and any personnel hired by the county judge-executive must also be approved by the fiscal court.  In contrast, removal of the county engineer is in the sole discretion of the county judge-executive pursuant to KRS 179.060 and the County's Administrative Code. Boone County Admin. Code § 30.15. *available at* http://library.amlegal.com/nxt/gateway.dll/Kentucky/booneco/boonecounty kentuckycodeofordinances?f=templates$fn=default.htm$3.0$vid=amlegal:booneco_ky (last accessed June 13, 2016).  Thus, for the removal of County Engineer Sketch, Moore was the final decision-maker, and Boone County is not immune from Sketch's § 1983 claims.

### b.    *Procedural Due Process*

Sketch alleges that his Fourteenth Amendment procedural due process rights were violated when Moore suspended him without pay without a hearing and forced him to retire. Procedural due process claims require a two-step analysis.  *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004) (citing *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000)).  First, the Court must determine "whether the alleged deprivation is within the ambit of the Fourteenth Amendment's protection of liberty and property."  *Shoemaker v. City of Howell*, 795 F.3d 553, 558-59 (6th Cir. 2015) (citing *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999)).  Second, if the plaintiff does have a protected interest, the Court must then

---

1) Counties may not be found liable under *respondeat superior* for the actions of their employees, but the exercise of final policy-making authority does not fall within this carve-out. *Pembaur*, 475 U.S. at 483.

determine how much process was due, *Mitchell*, 375 F.3d at 480, and whether the plaintiff was "afforded adequate process prior to and following the deprivation." *Shoemaker*, 795 F.3d at 559.

### 1.     Sketch's property interest was waived.

Sketch's § 1983 procedural due process claim cannot survive unless he had a property right in continued employment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). Property interests are not created by the Constitution; instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Id*. (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576-78 (1972)). A property interest can be created by "a state statute, a formal contract, or a contract implied from the circumstances." *Singfield v. Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004).

Sketch had a property interest in his job as County Engineer that was derived from Kentucky law. KRS 179.020 authorizes the county-judge executive to appoint a county road engineer. Once appointed, the county road engineer serves either a two- or four-year term. KRS 179.020(7). Removal of a county road engineer prior to the expiration of his or her term is governed by KRS 179.060. That provision provides that "[t]he county judge/executive may remove the county engineer, appointed under KRS 179.020, at any time for incompetency, malfeasance or misfeasance in office upon written charges after a hearing of which ten (10) days' notice shall be given by serving a copy of the charges upon the county engineer." KRS 179.060(1). Such a statutory protection is tantamount

11

to creating a Fourteenth Amendment property interest.[2]   *Loudermill*, 470 U.S. at 538 (holding that an Ohio statute, which entitled employees to "retain their positions during good behavior and efficient service" and who could not be dismissed "except for ... misfeasance, malfeasance, or nonfeasance in office," created a property interest in the employees' continued employment).

However, Sketch waived his property interest in continued employment by voluntarily retiring from his position.  Contrary to Sketch's protestations to the contrary, he voluntarily resigned.   A public employee with a property interest in continued employment is deprived of that interest by her employer if the employer constructively discharges her by forcing her to resign involuntarily. *Rhoads v. Bd. of Educ. of Mad River Local Sch. Dist.*, 103 F. App'x 888, 894 (6th Cir. 2004); *accord Parker v. Bd. of Regents*, 981 F.2d 1159, 1162 (10th Cir. 1992); *Leheny v. City of Pittsburgh*, 183 F.3d 220, 227-28 (3d Cir. 1999); *Hargray v. City of Hallandale*, 57 F.3d 1560, 1567-69 (11th Cir. 1995); *Angarita v. St. Louis Cnty.*, 981 F.2d 1537, 1544 (8th Cir. 1992); *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 173 (4th Cir. 1988).  If, however, a plaintiff resigns of his own free will, even as a result of a defendant's actions, then he "voluntarily relinquishes [his] property interest in continued employment, and the defendant cannot be found to have deprived [him] of that interest without due process of law." *Rhoads*, 103 F. App'x at 894.

Employee resignations are presumed to be voluntary, but this presumption may be rebutted if the employee can show that the resignation was involuntarily procured. *Id.* at

---

2) The Sixth Circuit has previously held that Kentucky county engineers enjoy a property interest under Kentucky law. *See Mineer v. Call*, 993 F.2d 1547, No. 92-5368, 1993 WL 144536, at *6 (6th Cir. May 4, 1993) (unpublished table decision).

895.  A resignation is involuntary if an objectively reasonable person would, under the totality of the circumstances, feel compelled to resign if he were in the employee's position. *Id*. (citing *Yearous v. Niobrara Cnty. Mem'l Hosp.*, 128 F.3d 1351, 1356 (10th Cir. 1997)). The relevant factors for this inquiry are: "(1) whether the employee was given an alternative to resignation[;] (2) whether the employee understood the nature of the choice [he] was given[;] (3) whether the employee was given a reasonable time in which to choose[;] and (4) whether the employee could select the effective date of resignation." *Id*. (quoting *Lenz v. Dewey*, 64 F.3d 547, 552 (10th Cir. 1995)).

Based on the above factors, Sketch's resignation was voluntary.  He was given a choice between resigning – or in his case, retiring with benefits – or going through with pre-termination proceedings.  Here, Sketch's choice was not even resignation or termination; rather, it was retirement or the risk or termination after proceedings, including the right to challenge the dismissal in the Boone County Circuit Court.  Moreover, the tough choice between resignation and contesting a termination is insufficient to prove that a resignation was involuntary,  so long as the employer had "good cause" to support the termination.  *Id*. As will be illustrated more fully below, Moore did have sufficient cause to support the termination.

It is also important that the employee be given sufficient time in which to make the choice.  *Id*. (citing *Dusanek v. Hannon*, 677 F.2d 538, 543 (7th Cir. 1982)).  Sketch had nearly three weeks to make his decision, which is more than sufficient. The Sixth Circuit has found that mere hours can be sufficient in some circumstances.  *Id*. at 895.  Further, Sketch was permitted to select his retirement date.  For all these reasons, Sketch cannot

13

claim that his resignation was involuntary.

Sketch's best argument is that he did not fully understand the choice he was given, but his ignorance was not the fault of the County. Sketch was represented by counsel, and should have fully understood the choice he was given, but was misinformed by that counsel. Sketch claims that he resigned, in part, because he did not believe he could participate in any pre- or post-termination hearings for fear of disclosing facts that would be used against him in the ongoing criminal investigation. His fears were unfounded.

A public employee cannot be forced, even out of court, to provide answers that might be used against him in a criminal prosecution. *Gardner v. Broderick*, 392 U.S. 273, 276-79 (1968); *see also Atwell v. Lisle Park Dist.*, 286 F.3d 987, 990 (7th Cir. 2002). So while a government employer has every right to investigate allegations of misconduct and to require that the employee answer the questions asked of him, the government's decision to do so comes with a cost: the employee must be given immunity from criminal prosecution based on his answers.[3] *Lefkowitz v. Cunningham*, 431 U.S. 801, 806 (1977); *see also Atwell*, 286 F.3d at 990. For all of the abovementioned reasons, the Court finds that Sketch voluntarily waived his property interest in continued employment with Boone County, and therefore waived his procedural due process rights in pre- and post-deprivation proceedings.

### 2. Sketch was given adequate due process.

The Court, having found that Sketch waived his property interest by voluntarily

---

3) While some circuits require the employer to advise the employee of his rights or to offer that the hearing be delayed until the criminal investigation of the employee is complete, *Atwell*, 286 F.3d at 990, the Sixth Circuit has not yet adopted such a rule.

14

resigning, will nevertheless continue with the procedural due process analysis out of an abundance of caution.  If Sketch had a property interest, the Court must determine what amount of process he was due.  *Shoemaker*, 795 F.3d at 559; *see also Mitchell*, 375 F.3d at 480.  Public employees who can be fired only for cause enjoy due process rights before and after deprivation of their property interest.  *Farhat v. Jopke*, 370 F.3d 580, 595 (6th Cir. 2004); *see also Shoemaker*, 795 F.3d at 559.

Due process can be summarized as "the requirement that a person ... be given notice of the case against him and an opportunity to meet it."  *Shoemaker*, 795 F.3d at 559 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 348-49)).  In determining how much process is due, the Court must weigh several factors: (1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation; (3) the probable value, if any, of additional or substitute safeguards; and (4) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.  *Mathews*, 424 U.S. at 335 (citing *Goldberg v. Kelly*, 397 U.S. 254, 263-71 (1970)).  As this multi-factored test suggests, due process requirements are "fluid and fact dependent."  *Shoemaker*, 795 F.3d at 559 (citing *Mathews*, 424 U.S. at 334).

While the *Mathews* factors inform the Court's analysis, it does not have a *carte blanche* upon which to work.  The Supreme Court and the Sixth Circuit have issued numerous opinions dealing with public employees and their due process rights.  The rights of public employees can be broken down in to pre- and post-deprivation categories.

Pre- and post-deprivation processes should be considered together as a single

15

package.  *Id*.  Depending on the interest at stake, the pre-deprivation process does not need to be elaborate.  Moreover, the sufficiency of the pre-deprivation procedures must be considered in conjunction with the options for post-deprivation review – if elaborate procedures for post-deprivation review are available, less elaborate pre-deprivation procedures may be sufficient.  *Leary*, 228 F.3d at 742-43.  Because the extent of pre-deprivation process required depends on the amount of post-deprivation process available, the Court will first address the post-deprivation procedures afforded to Sketch.

### (a)   *Post-Deprivation Due Process*

Ordinarily, a plaintiff who fails to utilize due process procedures available to him waives those rights.  *Farhat*, 370 F.3d at 596 ("[W]here the employee refuses to participate or chooses not to participate in the post-termination proceedings, then the employee has waived his procedural due process claim.") (citing *Krentz v. Robertson Fire Prot. Dist.*, 228 F.3d 897, 904 (8th Cir. 2000)).  But, while "[t]he law is well-established that it is the *opportunity* for a post-deprivation hearing before a neutral decision-maker that is required for due process," voluntary resignations still may be found not to waive procedural due process rights where the post-deprivation process was wholly inadequate.  *Id*.

No matter how the potential August 6th hearing is characterized,[4] pursuant to KRS 179.060(3) Sketch had a statutorily created right to full judicial review of Moore's decision. *See Cockriel v. Embry*, 513, S.W.2d 487, 487-88 (Ky. 1974) (holding that removal of a county engineer pursuant to KRS 179.060 must be supported by substantial evidence

---

4) The Boone County Administrative Code contemplates notice of the charges to the employee and thereafter a pre-dismissal hearing in which the person to be dismissed has the right to make a statement on their behalf, to be represented by counsel, to call witnesses and present evidence, and to cross-examine any witness that testifies against him.  Boone County Admin. Code § 30.0(C).

presented to the circuit court).[5]  Had Sketch taken advantage of his hearing before Moore on August 6th, and had Sketch been terminated at that hearing, he could have challenged his firing in a post-termination hearing before the Boone County Circuit Court.  State court judicial remedies, especially when they are specifically created by statute, have been held to satisfy post-deprivation due process requirements.  *See Jackson v. City of Columbus*, 194 F.3d 737, 750-51 (6th Cir. 1999) (holding that a mandamus action for reinstatement provided sufficient post-deprivation due process), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Mathews v. Ohio Pub. Employees Retirement Sys.*, 91 F. Supp. 3d 989, 1002-03 (S.D. Ohio 2015).

Sketch waived any post-deprivation due process claim by voluntarily retiring.  But, even if Sketch had not waived his rights, the Court finds that the post-deprivation procedures available to Sketch satisfied the Constitution's procedural due process requirements.  Accordingly, his claim for a violation of procedural due process rights based on the inadequacy of post-deprivation remedies is **denied**.

### (b) *Pre-Deprivation Due Process*

In general, public employees who can be fired only for cause are entitled to some type of pre-termination hearing.  *Farhat*, 370 F.3d at 595.  Pre-deprivation discipline short of termination most likely requires some amount of pre-deprivation process, but the extent is murky.  The Supreme Court has rejected a categorical requirement that a suspension without pay be preceded by a hearing, and still has not clarified what, if any, process is due

---

5)  KRS 179.060 does not explicitly create appellate procedures for removed county engineers.  However, KRS 179.060 provides that the person appointed to fill the role of the removed county engineer holds the office until the end of the unexpired term *or until a final order of a court of competent jurisdiction determines that the original county engineer was wrongfully and illegally removed and directs his reinstatement.*  Thus, the statute implies the right to post-termination procedures, and Kentucky circuit courts have filled this role.

to public employees who face non-termination discipline. *Gilbert v. Homar*, 520 U.S. 924, 929 (1997).

While the Sixth Circuit has not squarely addressed the issue, it has decided several cases that assist the Court's analysis.  The Sixth Circuit has found a two-day suspension without pay to be a constitutional violation in theory, but one so *de minimis* in practice as to forego the need for a pre-deprivation hearing. *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 272 & n. 1 (6th Cir. 1985).  Yet it has also held that a five-day suspension without pay was sufficient to trigger process requirements. *Boals v. Gray*, 775 F.2d 686, 689, n. 5 (6th Cir. 1985); *see also Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587 (6th Cir. 2004) (assuming for the purposes of the appeal that a five-day suspension without pay and a coerced retirement constituted a deprivation of property requiring a pre-deprivation hearing).

Here, it is safe to assume that Sketch's suspension without pay on July 17, 2013 triggered a right to some pre-deprivation process.  Sketch was suspended on July 17, but his hearing before Judge-Executive Moore was not until August 6, a span of over two weeks.  At Sketch's salary, the suspension period would have cost him more than $6,000, a figure that surely represents a deprivation of property sufficient to require some pre-deprivation process.  The Court acknowledges that Sketch was suspended pending a pre-termination hearing, a situation that is different than a routine disciplinary suspension where termination is not being contemplated.  *See Ethridge v. City of Brentwood, Tenn.*, 887 F.2d 1086, No. 88-6438, 1989 WL 123241, at *3 (6th Cir. Oct. 17, 1989) (unpublished table decision) (citing *Gniotek v. City of Philadelphia*, 808 F.2d 241, 242 (3d Cir. 1986)).  Furthermore, there was no third-party verification of the charges against him. *Gilbert*, 520

18

U.S. at 935 (holding that a third-party verification, such as an arrest, decreases the need for elaborate pre-deprivation proceedings, but also noting that, once charges are dropped, the risk of erroneous deprivation increases substantially); *see also FDIC v. Mallen*, 486 U.S. 230, 240-41 (1988) (holding that an *ex parte* finding of probable cause, such as a grand jury indictment, provides adequate assurance that a suspension is not unjustified). While Sketch was under criminal investigation and the case had been turned over to the county attorney for presentation to the grand jury, he had not been indicted or arrested. These factors together increase Sketch's private interest and increase the risk of an erroneous decision, requiring some pre-deprivation process.

However, Sketch's pre-deprivation process cannot be viewed in a vacuum. *Shoemaker*, 795 F.3d at 559.  While Sketch does not have to prove that post-deprivation procedures were inadequate in order to sustain his pre-deprivation procedural due process claim, the extent of post-deprivation procedures influences the amount of pre-deprivation process that is constitutionally required.  *Shoemaker*, 795 F.3d at 559; *Farhat*, 370 F.3d at 596; *see also Mitchell*, 375 F.3d at 484 (holding that where the deprivation is not random or unauthorized, plaintiffs are not required to plead or prove the inadequacy of post-termination state-law remedies). In this case, Sketch was entitled to appeal Judge-Executive Moore's decision to the Boone County Circuit Court.  His post-deprivation process thus included the right to a full evidentiary hearing, complete with a neutral decision-maker, presentation of evidence, and cross-examination of witnesses.  In light of this significant post-deprivation process, the need for pre-deprivation process is decreased. Indeed, an initial check against mistaken decisions is all that is necessary where an employee is provided with a full post-termination hearing.  *Id*. (citing *Loudermill*, 470 U.S.

19

at 546); *see also Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992) (holding that the pre-termination hearing is necessary but need not be elaborate so long as the plaintiff is entitled to a full hearing with judicial review at the post-termination stage).

All that due process requires in the pre-deprivation context is oral or written notice of the charges against the employee and an opportunity to rebut those charges. *Gilbert*, 520 U.S. at 929.  Sketch was provided that. He was called in to meet with Moore, Earlywine, and Buerkley, and was given notice of the charges against him.  He was allowed to speak at the hearing, and did not deny the veracity of the charges against him. A pre-termination hearing is an "initial check against mistaken decisions – essentially, a determination of whether there are reasonable grounds to believe that charges against the employee are true and support the proposed action."  *Gilbert*, 520 U.S. at 929 (citing *Loudermill*, 470 U.S. at 545-46)).  Sketch was provided that.  Moreover, the risk of an erroneous decision is also lower in this context because there was not a factual dispute about the charges pending.  In those cases where the facts are in dispute, more process may be needed. *Codd v. Vegler*, 429 U.S. 624, 627 (1972) (holding that a pre-deprivation name-clearing hearing is only useful if there is some factual dispute between the employer and the employee); *see also Alvin v. Suzuki*, 227 F.3d 107, 120-21 (3d Cir. 2000) (citing *Codd* for the proposition that less process is required where no facts are in dispute between the parties).  Here, Sketch did not appear to deny that he had authorized his employees to sell scrap metal and use the money to buy turkeys for low-income families.

So on to the burning question: all things considered, did Sketch receive adequate due process?  The short answer is yes.  When Sketch was suspended without pay, he was given notice of the charges against him, and provided with an opportunity to tell his side

20

of the story.  It does not matter that Moore was not a neutral decision-maker as one is not required during pre-deprivation proceedings. *Farhat*, 370 F.3d at 595-96. And it does not matter that Sketch was suspended at the same time he was given his hearing because there does not need to be a delay between the presentation of charges and the suspension.  *See Boals*, 775 F.2d at 691 (finding that where the charges against the employee are not denied, there need to be no delay between the presentation of charges and the pre-suspension hearing).  Accordingly, under the unique circumstances presented here, Sketch's July 17th hearing provided him with all the pre-deprivation procedural due process he was due.

Unfair, or wrongheaded, is not necessarily unconstitutional.  Instituting termination proceedings against an unblemished, nineteen-year employee for salvaging otherwise wasted county property – and using the profit derived therefrom to provide turkeys to needy families – falls somewhere between callous and Kafkaesque.  But the guise of procedural due process does not permit federal courts to meddle in the policy decisions of local governments.   For all the abovementioned reasons, Defendants are entitled to summary judgment on Sketch's procedural due process claims.

### 3.    Qualified Immunity

Having found that Sketch's constitutional rights were not violated, Moore should be entitled to qualified immunity.  The doctrine of qualified immunity shields Moore from liability in his individual capacity unless Sketch can demonstrate that:  (1) Moore violated Sketch's constitutional right to procedural due process; and (2) that the right violated was clearly established at the time of the constitutionally suspect conduct.   *Pearson v. Callahan*, 555 U.S. 223, 244 (2009) (permitting courts to address the two prongs of

21

qualified-immunity analysis in any order).

However, assuming that Sketch's rights were violated, Moore nevertheless is entitled to qualified immunity. While "[t]here need not be a case with the exact same fact pattern, or even 'fundamentally similar' or 'materially similar' facts," the defendant nevertheless needs fair warning that his actions are unconstitutional. *Brown v. Chapman*, 814 F.3d 447, 461 (6th Cir. 2016) (quoting *Cummings v. City of Akron*, 418 F.3d 676, 687 (6th Cir. 2005)). In determining whether a right was clearly established, the Court looks first to decisions of the Supreme Court, then to the Sixth Circuit, then to the other courts of appeals, and then the prior holdings of this Court. *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013). Here, if Sketch was entitled to more pre-deprivation process than he received – *i.e.*, more than a notice of the charges against him and an opportunity to tell his side of the story before being suspended without pay – that entitlement was not clearly established at the time. Neither the Supreme Court nor the Sixth Circuit have required more process than Sketch was afforded. In fact, the Court has not found any precedent entitling Sketch to greater process. Accordingly, Moore is entitled to qualified immunity from Sketch's procedural due process claim.

### c.   *Substantive Due Process*

Sketch has also alleged that his substantive due process rights were violated by Defendants. Specifically, he claims that his liberty interest in his reputation was tarnished by his termination.

The interests protected by substantive due process are much narrower than those protected by procedural due process. *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003). Substantive due process is the "the doctrine that governmental deprivations

22

of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed." *Shoemaker*, 795 F.3d at 564 (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)).  There are three types of interests protected by substantive due process: (1) those interests protected by specific constitutional guarantees, such as equal protection; (2) certain interests that are deeply rooted in tradition and the American conscience; and (3) a specific interest in being free from government actions that shock the conscience.  *Bell*, 351 F.3d at 250.

The Sixth Circuit has recognized a constitutional liberty interest in one's reputation, but that right is only implicated by state action in the termination context when five elements are satisfied.  *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir 1997); *see also Helm v. Eels*, No. 15-5776, 2016 WL 787907, at *6 (6th Cir. Mar. 1, 2016) (citing *Ludwig* for the five elements of a substantive due process claim based on deprivation of one's reputation).  First, the stigmatizing statements must be made in conjunction with plaintiff's termination from employment. *Id.*  Second, the employer's statements must have had the potential to seriously damage a plaintiff's standing and associations in his community or might otherwise impose a stigma or disability on him that would limit his freedom to take advantage of other employment opportunities. *Id*. Third, the stigmatizing statements or charges must be made public.  *Id*.  Fourth, they must be false. *Id.*  And finally, the public dissemination must have been voluntary.  *Id.*

Summary judgment is proper for Defendants because Sketch cannot meet all five elements of this test.  Drawing all inferences and facts in his favor, the Court finds that the charges were made in conjunction with Sketch's termination, that they were potentially very

damaging to his reputation, and that they were made public.[6]  Sketch's claim fails on element four, however, because Sketch has not, and cannot, dispute the veracity of the charges.  Sketch used county property in an unauthorized manner.  The non-white-goods scrap metal was county property, and Sketch converted that county property into revenue without informing the Fiscal Court or Judge-Executive Moore.  These actions violate the personnel code of conduct as set forth in the Boone County Administrative Code, and could support charges of malfeasance and misfeasance of office as alleged.  Sketch has never contested that he permitted his employee to convert County property without authorization.  These facts are not in dispute.  Instead, Sketch disagrees with the County's decision to begin termination proceedings against him.  The County was, however, within its rights to do so, and the charges were not based on upon false claims.  Accordingly, Defendants' Motion for Summary Judgment on Sketch's substantive due process claim is **granted**.

### iii.    Malicious Prosecution

Sketch also has alleged a claim of malicious prosecution against Moore under Kentucky common law.  Defendant Moore is entitled to summary judgment on this count because Sketch cannot satisfy all of the elements of a malicious prosecution claim.

Kentucky law disfavors the tort of malicious prosecution because "all persons should be able to freely resort to the courts for redress of a wrong."  *Garcia v. Whitaker*, 400 S.W.3d 270, 274 (Ky. 2013) (quoting *Raine v. Drasin*, 621 S.W.2d 895, 899 (Ky. 1981)).  Accordingly, "claimants alleging malicious prosecution must strictly comply with each

---

6) Despite scant evidence to the contrary, Sketch claims that Moore and others within Boone County government leaked details of his suspension to the media.  For the purposes of summary judgment, the Court will assume that this is true.

element of the tort." *Id*.  The following six elements must be met in order to prove malicious prosecution: (1) the institution or continuation of original judicial proceedings, either civil or criminal, or of administrative or disciplinary proceedings; (2) by, or at the instance of, the plaintiff; (3) the termination of such proceedings in defendant's favor; (4) malice in the institution of such proceeding; (5) want or lack of probable cause for the proceeding; and (6) the suffering of damage as a result of the proceeding.  *Id*. (citing *Raines*, 621 S.W.2d at 899).

To the extent that Sketch's Complaint claims malicious prosecution against Moore for the criminal investigation that was ultimately presented to the grand jury, that claim fails. Sketch admits that he has no evidence that those charges were made by or at the instance of Moore, precluding a malicious prosecution claim.  (Doc. # 50-1, p. 62).

If his Complaint is more properly construed as a claim for malicious prosecution for the disciplinary proceedings against Sketch, it still fails.  Drawing all facts and inferences in favor of Sketch, he cannot meet three of the six elements required.  The Court will assume that Sketch can prove that Moore instituted administrative or disciplinary proceedings against him, that those proceedings were brought by Moore, and that Sketch suffered damage as a result of the proceeding. But Sketch cannot prove that the proceedings were terminated in his favor, that there was a lack of a probable cause, or that Moore acted with malice.   In a malicious prosecution action, absent some underlying factual dispute that must be determined by the jury, the trial court determines as a matter of law in whose favor the proceedings were terminated.  *Davidson v. Castner-Knott Dry Goods Co. Inc.*, 202 S.W.3d 597, 606 (Ky. Ct. App. 2006); *see also* Restatement (Second) of Torts § 673(1)(b), cmt. e.  A resignation in the face of termination is a push at best.

25

The Court will consider malice and probable cause together because under Kentucky law "malice can be inferred from a lack of probable cause." *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38, 40 (Ky. 1931); *see also Phat's Bar & Grill v. Jefferson Cnty. Metro. Gov't*, 918 F. Supp. 2d 654, 665 (W.D. Ky. 2013) (citing *Massey v. McKinley*, 690 S.W.2d 131, 134 (Ky. 1985)).   Sketch, however, cannot prove a lack of probable cause for the disciplinary proceedings.  Probable cause is that "which would induce a man of ordinary prudence to believe that the person prosecuted had committed the crime the charged." *Garcia*, 400 S.W.3d at 274 (quoting *Louisville & N.R. Co. v. Sharp*, 140 S.W.2d 383, 385 (Ky. 1940).  Here, Sketch was charged with malfeasance and misfeasance of office.  (Doc. # 50-2, p. 1).  Specifically, the written notice of charges against him claimed that Sketch violated Boone County Administrative Code § 319.5(E), (R) & (U) and the County's Personnel Policies and Procedures Manual, Section F(2) by authorizing the sale of scrap metal, the revenue from which was never reported to the County, and from which unauthorized expenditures were made.  (Doc. # 50-2, p. 1-2).  The Boone County Administrative Code provisions that Sketch was accused of violating prohibit the "(E) theft, destruction, defacement, or misuse of county property ... (R) the borrowing of county property without permission, or other misuse of property ... (U) any [other] violation of county policies, including those in the employee handbook and otherwise." Boone County Admin. Code § 34.75.

Unlike the tort of abuse of process, where the proceedings may be justified but the tortfeasor had an ulterior motive, malicious prosecution requires that the proceeding lack justification.   *See Heck v. Humphrey*, 512 U.S. 477, 495 fn. 2 (1994) (Souter, J., concurring).  Sketch has not presented any evidence that the allegations against him were

26

unfounded.  He has admitted to authorizing his employees to begin recycling the scrap metal, and that he never disclosed the revenue stream to anyone on the Fiscal Court.  A reasonably prudent man would believe that Sketch had misused county property and funds via his authorization of the trash-for-turkeys program.   Accordingly, Sketch cannot demonstrate that there was a lack of probable cause for the disciplinary proceedings instituted against him.  And because there was not a lack of probable cause, the Court has nothing from which to infer malice.  *See Stearns*, 37 S.W.2d at 40; *see also Phat's Bar*, 918 F. Supp. 2d at 665.   Therefore, Sketch's malicious prosecution claim fails, and Defendants' Motion for Summary Judgment is **granted in full**.[7]

## III.   Conclusion

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   Plaintiff's Motion to Strike (Doc. # 49) is **granted**.   References to the polygraph will not be considered when adjudicating the underlying Motions;

(2)   Plaintiff Gregory Sketch's Motion for Partial Summary Judgment (Doc. # 24) is **denied**;

(3)   Defendants' Motion for Summary Judgment (Doc. # 25) is **granted** in full;

(4)   A Judgment shall be filed contemporaneously herewith.

This 10th day of June, 2016.



**Signed By:**

**_David L. Bunning_**

**United States District Judge**

---

7) Count 4 was a request for punitive damages.  Because all three substantive claims have been dismissed, that Count is rendered moot.

K:\DATA\ORDERS\Cov14\14-cv-130 MOO Denying Ps and Granting Ds SJ.wpd